IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEROY CHARLEY, JR., | ) | CASE NO. 1:03 CV 1607 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MARGARET BAGLEY, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

**I.  Introduction and Jurisdiction**

Before the Court is Leroy Charley, Jr.'s petition for writ of habeas corpus presenting eight grounds for relief.  Jurisdiction will lie if the petitioner remains in custody pursuant to a judgment of the state court and claims that such custody violates the Constitution, laws, or treaties of the United States.[1]

Here the State of Ohio retains custody of Charley under a program of supervised release subsequent to his release from the Mansfield  Correctional Institution in Mansfield, Ohio, on October 7, 2005.[2]  This Court, therefore, has jurisdiction over Charley's claims, except, as noted below, for Charley's second, third, and eighth grounds for relief, which are beyond the jurisdiction of a federal habeas court.

---

[1] 28 U.S.C. § 2254(a).

[2] The Ohio Department of Rehabilitation and Correction webpage for Leroy Charley, Jr., A399798, http://www.drc.state.oh.us.

After reviewing the remaining grounds that Charley raises, the Magistrate Judge recommends that ground seven be dismissed as procedurally defaulted and that grounds one, four, five, and six be denied on the merits.

## II.  Background

Petitioner Leroy Charley, Jr. was indicted on four counts of rape in violation of Ohio Revised Code § 2907.02(A)(1)(b).[3] The evidence presented at trial established the following:

> In the present case, D.M., the mother of K.L., testified that she lives in Lorain County with her daughter, son, and fiancé. She stated that Mr. Charley is her fiance's nephew and explained that he used to visit her family frequently. When asked about an incident that occurred the year her daughter was in fifth grade, she testified that her fiance, Brian, informed her that he had seen K.L., who was not wearing clothing from the waist down, and Mr. Charley together in the bedroom. D.M. stated that she questioned K.L. about the incident but did not pursue it further after K.L. denied that anything had happened.
>
> D.M. testified that, at a later point in time, K.L. approached her in an upset and embarrassed state, revealing that she was experiencing anal bleeding. D.M. stated that K.L. told her "I'm no longer your little girl[.] I'm not a virgin no more because somebody had sex with me." D.M. further testified that K.L. implicated Mr. Charley, referring to incidents of anal sex, oral sex and vaginal sex. D.M. stated that she took K.L. to the doctor on June 12, 2000, the first available appointment. She also stated that, after the appointment, she filed a complaint with the police and ensured that K.L. had been able to visit a psychologist.
>
> Dr. Ilona Jurek testified that she had been K.L.'s family physician for five years and had always known the child to be happy and well-adjusted. However, Dr. Jurek stated that, when she saw K.L. in June of 2000, she was crying and very distraught. Dr. Jurek testified that, although not necessarily indicative of sexual activity, K.L.'s hymen was no longer intact. She stated that she found no other physical evidence during her examination, noting that one would not expect to find any evidence if the sexual activity had occurred during a prior period of time.

---

[3] ECF # 16 at 1-2.

Patrolman Leslie Palmer of the City of Lorain Police Department testified that, on June 13, 2000, she investigated a complaint of rape. Patrolman Palmer stated that, when she arrived at the house from which the complaint originated, she met with K.L. and her mother. She testified that K.L., who was quite upset and had to stop several times because she was crying, described in detail the events leading up to the charges. Jane Robertson, a manager at Lorain County Children Services, testified that she had discussed the incidents with K.L., who was embarrassed and had a difficult time talking. Ms. Robertson stated that it is very common for a sexually abused child to delay reporting an incident of sexual abuse because there is usually a sense of fear, guilt or shame.

Brian, D.M.'s fiance, testified that Mr. Charley is his nephew and that the two of them used to be very close friends. He stated that he discovered Mr. Charley and K.L. in "a compromising position[;]" Mr. Charley was standing behind K.L., who was naked and on her hands and knees. He further stated that he became enraged and threw Mr. Charley out of the house. Brian testified that he was very upset because he loved his nephew but that he finally decided to tell D.M. about the incident.

K.L. testified that she used to get along well with Mr. Charley and that he had often visited her family at their house. Referring to the first instance of sexual contact, she stated that she had been sitting downstairs on the couch when Mr. Charley approached her and asked her to go upstairs with him. She stated that, although she did not want to go, they went into her bedroom; she thereafter proceeded to describe the sexual acts that had taken place in the room, stating that both anal and vaginal intercourse had occurred. K.L. also testified as to the second incident in which she described acts of oral and anal intercourse, stating that she and Mr. Charley were upstairs when Brian walked in on them. When asked, K.L. stated that she did not remember the exact date of the first incident but was certain that she was eleven years old and in the fifth grade. Similarly, even though she stated that she knew the date of the second instance, which occurred not long after the first instance, she later conceded that she had always had problems remembering the dates. K.L. explained that, at first, she had not told anyone about the sexual acts because she had been afraid that she would get in trouble.

Mr. Charley testified on his own behalf. He denied his guilt and stated that Brian was lying about finding him in the room with K.L. He also testified that he had never had a fight with Brian, was never asked to leave the house, and

-3-

that it was nothing more than a coincidence that he had stopped visiting the family.[4]

Based on this evidence, the jury convicted Charley of four counts of rape, and the trial judge sentenced him to five years imprisonment for each count, to be served concurrently.[5]

Charley appealed to the Ninth Appellate District Court of Appeals, raising six assignments of error.[6] The appellate court affirmed Charley's conviction.[7] Charley then filed a memorandum in support of jurisdiction to the Supreme Court of Ohio, raising six propositions of law.[8] The Supreme Court of Ohio declined jurisdiction for want of a substantial constitutional question.[9]

Charley raised one assignment of error in his application to reopen his direct appeal.[10] The court of appeals again denied Charley's application as untimely.[11] Charley then appealed that ruling to the Supreme Court of Ohio, raising two propositions of law.[12] The

---

[4] *Id.* at 152-55.

[5] *Id.* at 6.

[6] *Id.* at 17.

[7] *Id.* at 134-56.

[8] *Id.* at 162.

[9] *Id.* at 228.

[10] *Id.* at 229-42.

[11] *Id.* at 243.

[12] *Id.* at 246.

-4-

Supreme Court of Ohio declined jurisdiction for want of a substantial constitutional question.[13]

Charley also filed a petition for state post-conviction relief raising one claim of ineffective assistance of trial counsel.[14]  The trial court denied his petition.[15]  Charley did not appeal that decision.

Charley then filed a petition for writ of habeas corpus, presenting eight grounds for relief:

> **Ground One:** The trial court erred when it refused to provide petitioner with substitute counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

> **Ground Two:** The trial court erred in finding petitioner to be a sexual predator pursuant to Chapter 2950 of the O.R.C.

> **Ground Three:** The trial court erred when it permitted the state to amend the indictment in violation of his due process rights.

> **Ground Four:** The petitioner was denied the effective assistance of trial counsel.

> **Ground Five:** The evidence presented at trial was insufficient to support a finding of guilty.

> **Ground Six:** The verdict is against the manifest weight of the evidence.

> **Ground Seven:** The petitioner was denied the effective assistance of appellate counsel in violation of his Fourteenth Amendment rights under the United States Constitution and Article I Section 10 of the Ohio Constitution for

---

[13] *Id*. at 302.

[14] *Id*. at 303-17.

[15] *Id*. at 318-20.

counsels failure to raise the issue that the trial court abused its discretion by failing to instruct the petitioners jury on the lesser included offenses of gross sexual imposition pursuant to O.R.C. section 2904.05(A)(4).

**Ground Eight:** The Court of Appeals for Ohio has unfairly and unequally applied appellate rule 26(B)(5) and appellate rule 26(B)(2)(b) to petitioner when they failed to grant him a reopening of his appeal after he showed a colorable claim of ineffective assistance of appellate counsel and good cause for his untimely filing in violation of his Fourteenth Amendment Rights under the United States Constitution.[16]

### III.   Analysis

The state argues that Charley's second and third grounds for relief are non-cognizable state law claims.  The state also argues that Charley's seventh and eighth grounds for relief are procedurally defaulted.  Moreover, the state contends that Charley's first, fourth, fifth, and sixth grounds for relief should be denied since he cannot demonstrate that the state court of appeals' decision was contrary to or an unreasonable application of clearly established federal law.

**A.    Grounds two, three, and eight are beyond the jurisdiction of a federal habeas court or fail to present or state cognizable claims for habeas relief.**

***1.    Ground two – Classification in Ohio as a "sexual predator" does not place the designated person "in custody" for purposes of federal habeas jurisdiction.***

Ohio's classification of Charley as a sexual predator does not result in him being "in custody" for purposes of federal habeas jurisdiction.  The Sixth Circuit has held that classification as an Ohio sexual predator is "more analogous to collateral consequences [of a conviction] such as the loss of the right to vote than to severe restraints on freedom of

---

[16] ECF # 1.

movement such as parole."[17] As such, classification as a sexual predator in Ohio does not constitute being "in custody" for purposes of conferring jurisdiction on a federal habeas court.[18]

Accordingly, Charley's claim that he was improperly classified as a sexual predator is beyond the jurisdiction of a federal habeas court and should be dismissed.

**2.      *Ground three – Charley failed to fairly present his challenge to the amended indictment as a federal constitutional claim.***

Charley argues in his third ground that the state trial court erred when it amended his indictment in violation of the Fifth and Fourteenth Amendments to the United States Constitution.[19]  The state argues that Charley has waived this claim because he did not fairly present it to the state courts as a federal constitutional issue.

Initially, it should be noted that in his habeas petition Charley does not state any federal law applicable to amending an indictment, instead merely characterizing the trial court's action as "a failure of justice."[20]  Charley is equally perfunctory in his traverse, where he simply indicates that the state's amending of the indictment "violated his due process

---

[17] *Leslie v. Randle*, 296 F.3d 518, 523 (6th Cir. 2002).

[18] *Id.* at 520 (Leslie was incarcerated when he filed this habeas petition, citing his classification as a sexual predator in Ohio as the sole ground for relief.).

[19] ECF # 1 at 14.

[20] *Id.*

rights because it ambushed his defense ... [by] prevent[ing] petitioner from presenting his alibi defense."[21]

Charley's brief to the state court of appeals, which raised the issue of the amended indictment, cited no cases, framed no arguments in terms of federal constitutional rights, and relied exclusively on the argument that the change in the indictment language, which corrected the time period within which the alleged rapes were to have taken place, deprived Charley of his prepared alibi for the original time period.[22]

The state appeals court addressed the issue as entirely a matter of state law.[23]  It concluded that amending the time period here was permissible since state law explicitly allows amendments to conform the indictment to the evidence, provided the amendment does not alter the name or identity of the crime charged.[24]

A federal habeas court may not reconsider questions of state law but may only decide "whether a conviction violated the Constitution, laws, or treaties of the United States."[25] Moreover, interests of federalism and comity mandate that state courts be given the opportunity to remedy any constitutional defects in their own proceedings before such issues

---

[21] ECF # 17 at 4.

[22] ECF # 16 at 36.

[23] *Id.* at 145-47.

[24] *Id.* at 146.

[25] *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

are considered in a federal court.[26]  "Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts."[27]

Accordingly, it is well-settled that a constitutional claim is "fairly presented" to the state courts, and thus reviewable by a federal habeas court, when the petitioner, in stating the claim to the state court:

(1) relies on federal cases employing constitutional analysis;

(2) relies on state cases employing constitutional analysis in similar factual contexts;

(3) phrases the claim in terms of constitutional law or with sufficient particularity to allege the denial of a specific constitutional right; or,

(4) alleges facts well within the mainstream of constitutional law.[28]

Here, Charley attempts to cast this claim as a violation of the United States Constitution well after it was presented to the state court by adding a perfunctory assertion to his habeas petition that the trial court's ruling denied him due process of law.  However, federal habeas law requires that any federal constitutional argument be made first to the state court as a federal constitutional argument.[29]  Moreover, simply labeling an adverse state

---

[26] *Hafley v. Sowders*, 902 F.2d 480, 482 (6th Cir. 1990).

[27] *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

[28] *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).

[29] *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

-9-

court ruling a "due process violation" without citing a clearly established federal law applicable to that issue will not present a cognizable claim for habeas relief.[30]

Accordingly, the issue raised by Charley's third ground for relief was not fairly presented to the state courts and should be dismissed.

**3.    *Ground eight – Charley's challenge to the application of the Ohio Rule of Appellate Procedure 26(B) is not a cognizable habeas claim.***

Charley contends in ground eight of this petition that an Ohio appeals court "unfairly and unequally" applied Ohio Appellate Rule 26(B) when it denied him an untimely filing of his motion to reopen his appeal.[31]

Essentially, Charley maintains he was denied due process when the Ohio appeals court refused to permit his late filing on the grounds that "his untimeliness was due to his receiving ineffective assistance of appellate counsel on his appeal."[32]

The Ohio appellate court denied Charley's motion as untimely and further found no good cause for the untimely filing.[33]  Charley had claimed that his delay "was due to his receiving ineffective assistance of appellate counsel on his appeal."[34]

---

[30] *Blackmon*, 394 F.3d at 400.

[31] ECF # 1 at 26.

[32] *Id.*

[33] ECF # 16 at 243.

[34] ECF # 1 at 26 (referencing application for reopening of appeal).

The Sixth Circuit in *Lopez v. Wilson*[35] has recently clarified that an application for reopening an appeal under Ohio Rule of Appellate Procedure 26(B) is a collateral matter rather than part of direct review[36] and, as such, "there is no federal constitutional right to assistance of counsel at that [Rule 26(B)] stage."[37]

Accordingly, Charley's present claim that the state appeals court decision denying his untimely application was constitutionally defective in rejecting his argument of ineffective assistance of appellate counsel does not implicate a protected federal constitutional right. Absent such a right, a federal habeas court has no basis to review a state court decision.

Charley's eighth ground for relief should be dismissed as failing to present a cognizable claim for habeas review.[38]

## B.     Charley procedurally defaulted ground seven.

Ground seven asserts that Charley's appellate counsel was ineffective because he failed to raise on appeal an argument that the trial court abused its discretion in failing to instruct the jury on the lesser included offense of gross sexual imposition.[39]

---

[35] *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005).

[36] *Id.* at 352.

[37] *Id.* (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1991)).

[38] *See*, *Oliver v. Moore*, No. C-1-02-918, 2005 WL 1793844, at *10 (S.D. Ohio July 27, 2005) ("Ohio Court of Appeals' 'good cause' determination did not deprive petitioner of any right to procedural due process that he might possess in a proceeding on an untimely-filed application under Ohio R. App. P. 26(B) to reopen the appeal.").

[39] ECF # 1 at 18.

Ground seven arises out of Charley's attempt to have the Ohio Court of Appeals reopen his appeal under Ohio Rule of Appellate Procedure 26(B).  This is the argument he was precluded from making by the denial of his motion to reopen his appeal.  Ground eight, which is the denial itself, is addressed separately above.

The state argues that the denial of the untimely motion under Ohio Rule of Appellate Procedure 26(B), which thereby precluded consideration of a ground of ineffective assistance of appellate counsel, created a procedural default on that underlying ground.

Here, Charley does not contest the initial three elements of the analysis prescribed by *Maupin v. Smith*[40] for addressing procedural default in habeas cases.  Rather, Charley concedes these elements.  He asserts, however, that ineffective (actually, absence of) assistance of appellate counsel is a valid reason for being untimely and, accordingly, would so constitute "cause" under *Maupin* to save this habeas claim from procedural default.[41]

Charley's analysis fails, in light of *Lopez*, since he had no federally protected right to counsel after the conclusion of his direct appeal.  As such, the absence of counsel on the Rule 26(B) motion did not provide cause to excuse his procedural default for failing to timely file that motion.

_____

[40] *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) ((1) Is there an applicable state procedural rule petitioner has not complied with; (2) has the state court enforced that rule; (3) is the rule an "adequate and independent" basis for foreclosing review of the federal constitutional claim; and (4) can the petitioner demonstrate cause for not following the rule and prejudice from the alleged constitutional error?).

[41] ECF # 1 at 26-27, citing *Carpenter v. Mohr*, 163 F.3d 938 (6th Cir. 1998).  While Charley's argument is not helped by failing to note that *Carpenter* was overruled by the Supreme Court in *Edwards v. Carpenter*, 529 U.S. 446 (2000), it is ultimately negated by the Sixth Circuit's ruling in *Lopez*.

-12-

Ground seven of the petition should be dismissed for procedural default.

**C.** **Charley should be denied habeas relief on grounds one, four, five and six because the state courts' ruling on those grounds either are not contrary to or are a reasonable application of the clearly established federal law.**

*1.* *Standard of review – AEDPA: The Antiterrorism and Effective Death Penalty Act*

Where a petitioner presents a ground for relief that must be decided on its merits, the Antiterrorism and Effective Death Penalty Act of 1996[42] ("AEDPA") defines the appropriate standard of review. The AEDPA increased the deference that federal courts must give to the decisions of state courts in deciding petitions for habeas corpus relief. The AEDPA amended the standard of review in 28 U.S.C. § 2254(d) to prohibit habeas corpus relief unless the decision of the state court either diverges from federal law as determined by the Supreme Court of the United States **or** rests on an unreasonable determination of the facts from the evidence of record:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[43]

---

[42] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[43] 28 U.S.C. § 2254(d).

-13-

Where the state court correctly identified the controlling Supreme Court authority but had to apply it to facts materially different from those faced by the Court in establishing the controlling authority, the "unreasonable application" clause of § 2254(d)(1) comes into play.[44] Under the "unreasonable application" clause, the federal habeas court must grant the writ if the state court adopted the correct governing legal principle from the decisions of the Supreme Court but unreasonably applied that principle to the facts of the petitioner's case.[45]

Whether the state court unreasonably applied the principle turns on whether the state court's application of clearly established federal law was objectively unreasonable.[46] The Sixth Circuit has held that where the state court reaches the merits of a constitutional claim without applying clearly established federal law, the district court should review the decision to determine whether it was "contrary to" clearly established federal law.[47]

2.      *First ground for relief – the right to substitute counsel*

In his first ground for relief, Charley argues that the trial court denied his right to substitute counsel.[48] Specifically, Charley argues that the clearly established federal law of *Morris v. Slappy*[49] guarantees him the right to substitute counsel of his choosing, and,

---

[44] *Williams v. Taylor*, 529 U.S. 362, 407, 408 (2000).

[45] *Id.* at 413.

[46] *Id.* at 409.

[47] *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003).

[48] ECF # 1 at 6.

[49] *Morris v. Slappy*, 461 U.S. 1 (1983).

-14-

further, that the trial court erroneously denied him that right. The State argues that the state court of appeals reasonably applied *Slappy*.

The state court of appeals applied *Slappy* in deciding Charley's substitution of counsel claim in state court.[50] Therefore, this Court should determine whether the state court of appeals' application of *Slappy* was reasonable.

In *Morris v. Slappy*, a public defender initially represented defendant Joseph D. Slappy. After that attorney became unavailable due to a conflict and substitute counsel was appointed, the defendant moved the court for a continuance until his original counsel was once again available. The trial went forward with substitute counsel, and Slappy was convicted.

The Ninth Circuit reversed, however, holding that a criminal defendant had a Sixth Amendment right to a "meaningful attorney-client relationship" with his counsel. The Supreme Court granted certiorari to decide whether the trial court's denial of the continuance violated the defendant's Sixth Amendment right to counsel.

The Supreme Court in *Slappy* reversed the Ninth Circuit.[51] The Court held that while a criminal defendant has a right to an attorney, the right to a "meaningful relationship" has

---

[50] ECF # 16 at 136-37.

[51] *Slappy*, 461 U.S. at 14.

"no basis in the law."[52]  The Court refused to extend the Sixth Amendment right to counsel to the extent that the Ninth Circuit had done.[53]

The state court of appeals held that Charley's Sixth Amendment rights were not violated by the trial court's refusal to appoint substitute counsel.[54]  The court of appeals reasoned that Charley was not required to have a "meaningful relationship" with counsel, but, rather, his counsel was required to provide "effective assistance."[55]

The state court of appeals noted that Charley and his trial counsel had disagreed about trial tactics and, as trial counsel told the court at a pre-trial hearing on the question of a possible substitution of counsel, "he [Charley] has a different theory of the case than I do."[56] But, as the appeals court emphasized, counsel ultimately informed the trial judge that he had been prepared for trial before trial commenced.[57]

Accordingly, the state appeals court denied Charley relief and held that "disagreement over trial tactics is not sufficient to warrant substitution of counsel."[58]  The Ohio appeals court also held that Charley had not shown any prejudice from the decision of the trial court

---

[52] *Id*. at 13.

[53] *Id.* at 14.

[54] ECF # 16 at 138-39.

[55] *Id.* at 136-37.

[56] *Id.* at 137-38.

[57] *Id.* at 138-39.

[58] *Id.*

to disallow a substitution because his attorney had told the court that "he had been prepared to go to trial" in advance of the trial.[59]

Charley concedes that *Slappy* provides the relevant framework for federal constitutional analysis here.[60]  He asserts, however, that the "breakdown in communication [between appointed counsel and Charley] resulted in prejudice to the petitioner where there was [an] absolute lack of preparation to present [an] alibi defense."[61]

The state court of appeals application of *Slappy* was reasonable.  The state court of appeals correctly recognized that Charley did not have a right to a "meaningful relationship" with his attorney.  It further correctly noted that Charley was not prejudiced by any failure to substitute counsel since trial counsel conceded he was adequately prepared for trial.  Charley's first ground for relief should be denied.

**3.    *Fourth ground for relief – ineffective assistance of trial counsel***

In his fourth ground for relief, Charley argues that his trial counsel did not meet the minimum standards for constitutionally effective assistance set forth by the United States Supreme Court in *Strickland v Washington*.[62]  Specifically, Charley argues that the trial court's failure to allow substitute counsel resulted in a situation where "trial counsel

---

[59] *Id.* at 139.

[60] ECF # 1 at 8.

[61] *Id.*

[62] ECF # 1 at 15, citing *Strickland v. Washington*, 466 U.S. 668 (1984).

indicated to the court that could he could not properly prepare for and conduct the defense in the trial in this matter."[63]

The state court of appeals applied *Strickland* in deciding Charley's ineffective assistance of counsel claim.[64] Therefore, this Court should determine whether the state court of appeals' application of *Strickland* was unreasonable.

The clearly established federal law governing ineffective assistance of counsel claims was set forth by the Supreme Court in *Strickland*.[65] The Court established a two-part analysis for determining the constitutional effectiveness of counsel.[66] First, counsel's actions must be "outside the wide range of professionally competent assistance."[67] Under this first part of the analysis, the defendant or petitioner must overcome a presumption that the challenged decision was part of sound trial strategy.[68] Second, where counsel is professionally unreasonable, the deficient performance by counsel must prejudice the defendant – that is, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[69]

---

[63] *Id.* at 6, 7 (incorporated by reference in ECF #1 at 15).

[64] ECF # 16 at 147-48.

[65] *Strickland*, 466 U.S. 668.

[66] *Id*. at 668.

[67] *Id*. at 690.

[68] *Id*. at 689, 690.

[69] *Id*. at 694.

The state court of appeals held that Charley requested a new attorney prior to trial because of a disagreement with counsel over strategy.[70]  However, the court of appeals further observed that Charley failed to show how, despite pre-trial disagreements over strategy, his counsel's performance at trial was deficient.[71]  The court held that it is not sufficient to claim, as Charley does here, that "such deficiency must be presumed from his counsel's statements" at the pre-trial hearing on substitution of counsel.[72]

Accordingly, the state court of appeals denied Charley relief, holding that Charley had "failed to establish that his counsel's performance at trial fell 'below an objective standard of reasonable representation,' [or] ... that he was prejudiced by any alleged deficiencies with regard to counsel's performance at trial."[73]

The state court of appeals' application of *Strickland* was reasonable.  The state court of appeals reasonably ruled that Charley's counsel should not be presumed to be ineffective because he once represented to the trial court that he was unprepared for trial.[74]  Further, it was reasonable to conclude that Charley had demonstrated no prejudice from counsel's statement, choosing to simply rely on the statement itself.

Therefore, Charley's fourth ground for relief should be denied.

---

[70] ECF # 16 at 149-50.

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] The record also indicates that trial counsel later informed the trial court he had been prepared.  *See* ECF # 16 at 149.

### 4.    *Grounds for relief five and six – weight of the evidence*

In his fifth and sixth grounds for relief, Charley argues that there was insufficient evidence to support each element of his conviction.  In ground five, he contends that the conviction was not supported by sufficient evidence;[75] in ground six, he contends that it was against the manifest weight of the evidence.[76]

Charley simply alleges that the victim, identified as K.L., previously stated that Charley did not have intercourse with her; that Brian Charley thought nothing had occurred between K.L. and Charley; and that there was no physical evidence that K.L. had sexual relations with anyone, "let alone specific evidence that such sexual contact involved the petitioner."[77]

The state responds by arguing that if the jury found the testimony of K.L. credible, that testimony alone was enough to support a conviction against Charley that was not contrary to the clearly established federal law of *Jackson v. Virginia*.[78]

The state court of appeals extensively addressed the claim that the verdict was against the manifest weight of the evidence under Ohio law by "review[ing] the entire record, weigh[ing] the evidence and all reasonable inferences, consider[ing] the credibility of witnesses and determining whether, in resolving conflicts in the evidence, the trier of fact

---

[75] ECF # 1 at 16.

[76] *Id.* at 17.

[77] *Id.*

[78] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[79]

Subsequent to considering the claim that the verdict was against the manifest weight of the evidence, the Ohio appellate court addressed the claim that the verdict was supported by insufficient evidence.[80]  In so doing, the state court did not identify clearly established federal law in deciding Charley's insufficiency of the evidence claim in state court.[81]

Therefore, this Court should determine whether the state court of appeals' ruling was contrary to clearly established federal law.[82]

As an initial matter, it must be noted that a manifest weight is not a claim cognizable on federal habeas review.[83]  The only constitutional challenge to the sufficiency of evidence is that made under the clearly established federal law set out in *Jackson v. Virginia*.[84]

*Jackson v. Virginia* instructs a court reviewing the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[79] ECF # 16 at 151-52.

[80] *Id.* at 155-56.

[81] *Id.*  The state appeals court noted that having already determined that Charley's conviction was not against the manifest weight of the evidence, it necessarily followed that the conviction was sustained by sufficient evidence.

[82] *Maples*, 340 F.3d at 437.

[83] *Nash v. Eberlin*, ___ F.3d ___, 2006 WL 305523, at *2 (6th Cir. 2006).

[84] *Id.*

-21-

beyond a reasonable doubt."[85]  If the prosecution presented sufficient evidence to allow any rational trier of fact to find the elements of rape beyond a reasonable doubt, then the state court's rulings were not contrary to, or an unreasonable application of, the clearly established law of *Jackson*.

Under this standard, the state court of appeals found that there was sufficient evidence to convict Charley.[86]  The court reasoned that there was enough evidence presented at trial to allow the jury to find that Charley committed each element of the offense of rape.[87]  The state court of appeals denied Charley relief.[88]

The offense of rape, as defined in Ohio Revised Code § 2907.02(A)(1)(b), reads in relevant part:  "No person shall engage in sexual conduct with another who is not the spouse of the offender when ... [t]he other person is less than thirteen years of age[.]"[89]  Charley and K.L., the victim of the rape, are persons, and K.L. testified at trial that she was less than thirteen years of age when Charley had sexual intercourse with her.[90]

Unlike a state court weighing whether the verdict was against the manifest weight of the evidence, a federal habeas court may not, as Charley wishes, resolve conflicts in the

---

[85] *Jackson*, 443 U.S. at 319 (emphasis in the original).

[86] ECF # 16 at 155.

[87] *Id.* at 152, 155.

[88] *Id.* at 155.

[89] *Id.* at 152.

[90] *Id.* at 154-55 ("K.L. stated that she did not remember the exact date of the first incident but was certain that she was eleven years old and in fifth grade.").

-22-

evidence, give greater or lesser weight to selected pieces of evidence, or judge credibility of witnesses.[91]

The state court of appeals' decision here was not contrary to *Jackson*.  The state court of appeals correctly ruled that there was enough evidence to support each element of Charley's rape conviction "after viewing the evidence in the light most favorable to the prosecution."[92]  K.L.'s testimony alone, if believed by the jury, was sufficient to convict Charley of rape as defined in Ohio law.

Charley's fifth and sixth grounds for relief should, therefore, be denied.

## IV.  Conclusion and Recommendation

The Magistrate Judge recommends that Charley be denied habeas corpus relief. Charley's second, third, seventh, and eighth grounds for relief should be dismissed without reaching their merits.  Charley's first, fourth, fifth, and sixth grounds for relief should be denied on the merits.

Dated:  March 1, 2006                         s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

---

[91] *Jackson*, 433 U.S. at 320; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). *See* ECF # 17 at 6, inviting this Court to resolve a purported conflict of K.L., give greater weight to the lack of physical evidence, and re-assess the credibility afforded to one element of the testimony of Brian Charley.

[92] *Jackson*, 443 U.S. at 319.

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[93]

---

[93] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).